UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

IN THE MATTER OF THE            MEMORANDUM
EXTRADITION OF                  OPINION AND ORDER
WILLIAM ALCIVAR MEDINA RODRIGUEZ
                                08 M 770 (ETB)

-----------------------------------------------------------------------X

Before the Court is the request of the Republic of Peru ("Peru") for the extradition of William Alcivar Medina Rodriguez ("Medina Rodriguez"), pursuant to the Extradition Treaty in place between the United States and Peru (the "Treaty"). Medina Rodriguez opposes his extradition on the grounds that the documents submitted by the government of Peru in support of its request do not establish probable cause to believe that he is the individual alleged to have committed the crimes charged in Peru. For the following reasons, Peru's request for extradition is granted.

PROCEDURAL HISTORY

On August 20, 2008, Medina Rodriguez was detained by United States Custom and Border Protection officers at John F. Kennedy International Airport in Queens, New York, after arriving on a flight from Ecuador. (Compl. and Aff. in Supp. of Application for Provisional Arrest and Arrest Warrant ¶ 4.) On August 21, 2008, a complaint was filed on behalf of Peru, pursuant to the Treaty, seeking the provisional arrest of Medina Rodriguez. (Id.) Medina Rodriguez was arraigned before Magistrate Judge Orenstein on August 22, 2008 and was ordered detained pending the outcome of an extradition hearing. On October 7, 2008, the

Government filed the within Extradition Request with the Court. An extradition hearing was held before the undersigned on January 23, 2009.

## THE CRIMINAL CHARGES

Peru seeks the extradition of Medina Rodriguez to face charges of illegal drug trafficking, in violation of Articles 296 and 297 of the Peruvian Criminal Code. (Extradition Request 26.)[1] Specifically, Medina Rodriguez is accused of masterminding and participating in an international narcotics smuggling conspiracy through the use of what are commonly referred to as "drug couriers" or "mules." (Id. 26-27.) Medina Rodriguez is alleged to have delivered approximately 2.558 kilograms of cocaine to three Guatemalan nationals, Emilio Santizo Guzman ("Guzman"), Eliza Sarai Hoajaca ("Hoajaca"), and Lorena Santizo Rosales ("Rosales") (collectively, the "couriers"), for the purpose of transporting drugs to Madrid, Spain. (Id.) The three couriers were allegedly recruited in Guatemala and transported to Peru for the purpose of transporting drugs. (Id. 27.) Medina Rodriguez is alleged to have met Guzman, Hoajaca and Rosales upon their arrival in Lima, Peru and provided them with housing accommodations and instructions concerning the transportation of the cocaine to Spain. (Id. 27.)

On March 19, 2005, Guzman, Hoajaca and Rosales were detained by Peruvian police at the Jorge Chavez International Airport as they were about to travel to Spain. (Id. 27.) Drugs were confiscated from the three couriers and they were arrested and subsequently convicted in Peru. (Id. 27.)

---

[1] References are to the Bates numbers of the Extradition Request submitted by the Government.

## THE PROFFERED EVIDENCE

In support of its request, Peru has submitted the witness statements from Guzman, Hoajaca and Rosales, as well as a copy of Medina Rodriguez's photographic identification card from the Republic of Ecuador, which card was found in Medina Rodriguez's possession when he was arrested in New York in August 2008.

A.  Guzman's Statement

Guzman provided a sworn statement to the Peruvian court on April 2, 2005. (Extradition Request 47.) Guzman testified that he was recruited to travel from Guatemala to Peru, along with his daughter, Rosales, and his common law wife, Hoajaca, by a woman named "Vicky," to work in a textile factory making clothes for a period of three months. (Id. 47-49.) Vicky provided Guzman, Rosales and Hoajaca with airline tickets to Peru and money to obtain passports. (Id.)

Guzman, Rosales and Hoajaca traveled to Peru on March 4, 2005 and were met by two unknown individuals who transported them to a hotel. (Id. 48.) On March 5, 2005, a man named "William" and a woman named "Roxana" picked the three couriers up from the hotel, tore up their employment contracts and smiled, informing them that they had been recruited to transport drugs to Spain and not for employment purposes. (Id.) Guzman testified that he initially refused but that he was forced to transport the drugs under threats of harm to his family. (Id.) Guzman also testified that he identified "William" as the same man in a photograph shown to him by the Peruvian police. (Id.)

Guzman, Rosales and Hoajaca stayed at boarding houses during their time in Peru and were eventually taken to William and Roxana's apartment, where Guzman ingested ninety-nine

-3-

capsules containing drugs. (Id. 48-49.) The next day, March 19, 2005, the three couriers were taken to the airport to transport the drugs to Spain. (Id. 49.)

  B.  Rosales' Statements

Guzman's daughter, Rosales, provided two statements to the Peruvian police and the court. The first, provided to the Peruvian police, was unsworn and took place on March 23, 2005. (Extradition Request 43.) The second, provided to the Peruvian court, was a sworn statement and took place on April 2, 2005. (Id. 52.)

Rosales testified that she was recruited to travel to Peru by a woman named Celia Victoria Urizar for employment purposes, pursuant to an employment contract that she received. (Id. 45, 52-53.) After arriving in Peru, however, "William Medina Rodriguez," whom Rosales also identified as "William Alcivar Medina Rodriguez," took Rosales, Guzman and Hoajaca to a boarding house, took their employment contracts, and informed them that they would be transporting drugs to Spain. (Id. 45, 53-54.) Rosales testified that she refused to transport drugs but was forced to do so under threats from Medina Rodriguez that he would not return her daughter, who was being cared for by Celia Victoria Urizar. (Id. 53-54.)

Rosales, Guzman and Hoajaca stayed at two boarding houses and were then brought to Medina Rodriguez's apartment where his wife, whom Rosales identified as "Roxana Elizabeth Blanco," was also present. (Id. 44, 53.) Rosales testified that on March 19, 2005, Medina Rodriguez inserted a capsule containing drugs inside her vagina. (Id. 44, 53.) Rosales further testified that Guzman and Hoajaca had begun ingesting capsules containing drugs the day before. (Id. 53) The three couriers then proceeded to the airport where they were arrested. (Id.)

C.  Hoajaca's Statement

Hoajaca, Guzman's common law wife, also provided a sworn statement to the Peruvian court on April 2, 2005. (Extradition Request 56.) She testified that she was recruited to travel to Peru by "Vicky," pursuant to a three-month employment contract to sell clothes. (Id. 57.) After arriving in Peru, "William" took Hoajaca, Guzman and Rosales to a boarding house and informed them that they were going to transport drugs to Madrid, Spain. (Id.). Hoajaca testified that she refused to transport drugs but was forced to because "William" threatened her family in Guatemala if she did not do so. (Id.)

Hoajaca, Guzman and Rosales stayed in two boarding houses and then "Roxana Blanco," whom Hoajaca identified as "the wife of William Medina Rodriguez," took the three couriers to the apartment she shared with Medina Rodriguez. (Id. 58.) At the apartment, Roxana Blanco provided the couriers with "medicine to clean [their] stomachs out and then gave [them] some more medicine to hold the drugs in [their] stomachs and to [prevent them] from evacuating." (Id.) Thereafter, Hoajaca began ingesting the capsules containing drugs. (Id.) Hoajaca ingested 66 capsules and was forced to insert another ten in her rectum and her vagina. (Id.) Hoajaca testified that Medina Rodriguez would "insult" the couriers and "intimidate" them into swallowing the capsules containing drugs. (Id.)

On March 19, 2005, Hoajaca, Guzman and Rosales were detained at the airport in Peru as they were about to travel to Spain. (Id. 56.) Their luggage and bodies were searched and the Peruvian police discovered that they were carrying drugs. (Id. 56-57.)

DISCUSSION

I.   Extradition Requirements

To issue a Certification of Extraditability, the Court must determine the following: (1) there are criminal charges pending in the requesting state; (2) the charges are considered extraditable offenses under the Treaty; (3) the individual before the court is actually the person sought in the foreign state; and (4) "there is probable cause to believe that a crime was committed by the person before the court based on competent legal evidence presented to the court." In re Extradition of Waters, No. 03m1072, 2003 U.S. Dist. LEXIS 24399, at *4 (E.D.N.Y. Nov. 24, 2003) (citing United States v. Barr, 619 F. Supp. 1068, 1070 (E.D. Pa. 1985)). The Court must also certify that it "has jurisdiction over the fugitive and that the judicial officer is authorized to conduct extradition proceedings." Waters, 2003 U.S. Dist. LEXIS 24399, at *4-5 (citing cases).

Here, the Court has personal jurisdiction over Medina Rodriguez as a result of his arrest within the Eastern District of New York and his presence before this Court. See id. at *5 (citing In re Extradition of Pazienza, 619 F. Supp. 611, 616 (S.D.N.Y. 1985)). Moreover, the Local Rules empower this Court to hear extradition proceedings. See E.D.N.Y. Loc. Crim. R. 58.1(b) ("Magistrate judges are hereby authorized to exercise the jurisdiction set forth in 18 U.S.C. § 3184."). Finally, the parties do not dispute that the Treaty between the United States and Peru is valid, that there are criminal charges pending in Peru and that the charged offense is a crime under the laws of both the United States and Peru. (Gov't Mem. of Law 6; Letter from Siegel, J. to Boyle, J. dated Jan. 9, 2009 at 1.)

Medina Rodriguez is not permitted to challenge or contradict the evidence offered by the

Government on behalf of Peru. "[A]n accused in an extradition hearing has no right to contradict the requesting country's proof or challenge its credibility, but may simply offer evidence that explains or clarifies that proof." Valencia v. Scott, Nos. CV 90-3745, 91-1959, 1992 U.S. Dist. LEXIS 3886, at *9-10 (E.D.N.Y. Mar. 19, 1992); see also In re Extradition of Vukcevic, No. 95 Crim. Misc.1 p.1, 1995 U.S. Dist. LEXIS 16981, at *20 (S.D.N.Y. Nov. 13, 1995) (stating that "the defendant may not offer evidence to contradict the proof offered by the Government"). Medina Rodriguez has not attempted to explain or clarify Peru's evidence in any way. Rather, Medina Rodriguez seeks to challenge the evidence offered on the grounds that although Peru is seeking an individual with the same name as his to answer for charges of drug trafficking, it has not submitted adequate evidence to prove that the person who committed the crime in question is in fact him.

Accordingly, extradition is required if the remaining two prongs of the test set forth above - identity and probable cause - are met. The sole issue in dispute here is identity.

II.  Identity

Medina Rodriguez argues that while the documents submitted by Peru "establish probable cause to believe a person Peru called 'William Alcivar Medina Rodriguez' committed an extraditable offense . . . the documents do not establish probable cause to find . . . Medina [Rodriguez] is the person so named by Peru." (Letter from Siegel, J. to Boyle, J., dated Dec. 22, 2008, at 5.) Medina Rodriguez bases his argument primarily on the grounds that none of the witnesses identified a known photograph of him and that only one of the witnesses - Hoajaca - provided a physical description of the person Peru is seeking, which Medina Rodriguez asserts

does not match him in several respects. (Id. at 1.) Such an identification by the extraditing state is not a prerequisite.

In support of proof of identity, the Government states that among the documents sent by Peru with its extradition request was a copy of Medina Rodriguez's identification card from the Republic of Ecuador, which bears the name William Alcivar Medina Rodrigez and the number 091312482-2, and contains a photograph of Medina Rodriguez. (Gov't Mem. of Law 4.) A copy of this identification card has been provided to the Court with the Extradition Request.[2] (Extradition Request 117.) This same card was found in Medina Rodriguez's possession when he was arrested at John F. Kennedy International Airport in New York. (Gov't Mem. of Law Ex. 1.) There is no contention that Medina Rodriguez is not the person depicted in the above photo identification card found on his person when he was arrested herein.

In addition, when Medina Rodriguez was arrested, it appears that he was also carrying two passports from the Republic of Ecuador, both bearing the name William Alcivar Medina Rodriguez and the passport number 0913124822 - the same identification number found on the identification card provided by Peru in support of its extradition request. (Gov't Mem. of Law Ex. 1.) Medina Rodriguez also had several other pieces of identification on him at the time he was arrested, including (1) a New York State Learner Permit, bearing the name W.A. Medina-Rodriguez; (2) a Social Security Card, bearing the name William Alcivar Medina Rodriguez; (3)

---

[2] It is evident from the papers filed in support of extradition that Peru's request was made prior to Medina Rodriguez's apprehension herein. Thus, before Medina Rodriguez was arrested on the within offense in New York, Peruvian authorities had identified the defendant now before the Court as the person sought to answer for drug offenses in Peru. There is reference to Medina Rodriguez being seen at a United States border crossing on July 25, 2006 - approximately two years before his arrest in New York on August 20, 2008 for the within charge. (Extradition Request 74.) This probably gave rise to the request for extradition.

a New York Residence Identification Card, which bears the name William A. Medina but lists the same address as that found on the New York State Learner Permit; and, (4) a Permanent Resident Card, bearing the name William A. Medina Rodriguez. (Id.)

Moreover, all three statements of the couriers are markedly similar with respect to their accounts of Medina Rodriguez's alleged involvement in the drug trafficking for which Peru seeks to extradite him. Two of the three witnesses, Rosales and Hoajaca, identified Medina Rodriguez by his first and last names and stated that he forced them to transport drugs and supplied them with the drugs for that purpose. Although Guzman only knew the individual Peru is seeking by the name "William," he identified the man as the same person in a picture shown to him by the Peruvian police. Guzman's statement concerning the events that occurred and "William's" actions are almost identical to the statements provided by Rosales and Hoajaca. Where "[s]everal individuals note[] the same type of behavior by the same individual," and identify the perpetrator by name, probable cause to extradite has been found. See, e.g., Murphy v. United States, No. 98-CV-1058, 1998 U.S. Dist. LEXIS 22642, at *8-9 (N.D.N.Y. Nov. 30, 1998) (finding sufficient evidence of probable cause where although only one individual identified a photograph of the perpetrator, the victim "knew the name and described the alleged perpetrator of the crimes" and several witnesses provided similar accounts with respect to the perpetrator's behavior).

Based on the statements of Guzman, Rosales and Hoajaca, and based on the identification documents submitted to the Court, there is probable cause to believe that the individual before the Court is William Alcivar Medina Rodriguez, for whom extradition is sought. See Waters, 2003 U.S. Dist. LEXIS 24399, at *6 (finding identity prong of extradition test satisfied where


witness statements named the defendant and a passport bearing his name was found in his possession when he was arrested.)

III.     Probable Cause

It is well-established that extradition hearings "do[] not inquire into the ultimate guilt or innocence of the fugitive, but rather determine[] whether the foreign country has presented sufficient competent legal evidence to support a finding of probable cause to believe that the fugitive is guilty." Waters, 2003 U.S. Dist. LEXIS 24399, at *7 (citing cases); see also Valencia, 1992 U.S. Dist. LEXIS 3886, at *9 ("An extradition proceeding, unlike a criminal trial, is not intended to adjudicate the accused's guilt or innocence . . . Its sole purpose is to determine whether the evidence of his criminal conduct suffices to justify extradition under the relevant treaty."). "The weight and sufficiency of that evidence is for the committing court." Murphy, 1998 U.S. Dist. LEXIS 22642, at *7 (citing cases). Accordingly, the requesting country is not required to present evidence at the extradition hearing that would establish the accused's guilt beyond a reasonable doubt; rather, "it is a 'well entrenched rule' that 'extradition procedures are not to be converted into a dress rehearsal trial.'" Id. at * 8 (quoting Jhirad v. Ferrandina, 536 F.2d 478, 484 (2d Cir. 1976)).

"Probable cause has been defined as the level of evidence 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" Waters, 2003 U.S. Dist. LEXIS 24399, at *8 (quoting In re Extradition of Atta, 706 F. Supp. 1032, 1050 (E.D.N.Y. 1989)) (additional citation omitted). To that end, both hearsay and "unsworn statements of absent witnesses" are considered admissible evidence in the context of

an extradition hearing. Valencia, 1992 U.S. Dist. LEXIS 3886, at *9 (citing Collins v. Loisel, 259 U.S. 309, 317 (1922)); see also Waters, 2003 U.S. Dist. LEXIS 24399, at *8. Moreover, "courts have consistently held that accomplice testimony, whether corroborated or not, is competent evidence to support a finding of probable cause." Vuckevic, 1995 U.S. Dist. LEXIS 16981, at *21 (citing cases).

Applying the foregoing principles to the instant matter, I find that there is probable cause to believe that Medina Rodriguez engaged in illegal drug trafficking. As stated supra, accomplice testimony, even if not corroborated, is sufficient evidence on which to base a finding of probable cause. See Vuckevic, 1995 U.S. Dist. LEXIS 16981, at *21; Ahmad v. Wigen, 726 F. Supp. 389. 400 (E.D.N.Y. 1989) ("As a matter of law, accomplice testimony is sufficient even without corroboration to demonstrate probable cause to certify the accused for extradition."). Here, Guzman, Rosales and Hoajaca were all accomplices, whether voluntarily or not, of Medina Rodriguez in the international drug smuggling conspiracy. Accordingly, their testimony alone is enough to find probable cause. "Whether ultimately the[] statements [of the three couriers] will be sufficient for conviction is not an issue to be determined by this court." Murphy, 1998 U.S. Dist. LEXIS 22642, at *9. As the Second Circuit has held, "a foreign government is not required to present its entire case in this country" when seeking to extradite an accused. Id. (citing Austin v. Healey, 5 F.3d 598, 605 (2d Cir. 1993)).

Based on the foregoing, I find that probable cause exists to extradite Medina Rodriguez to Peru, as requested. Medina Rodriguez will have a "full opportunity to challenge the credibility of his alleged accomplices' confessions at a trial in [Peru] under the rules of evidence in that country . . . ." Ahmad, 726 F. Supp. at 400. For now, the Court concludes only that

Medina Rodriguez is eligible for extradition to Peru to stand trial there on the pending charges.

<p style="text-align:center;">CONCLUSION</p>

Based on the foregoing, I conclude that Peru has satisfied the documentary evidence and other procedural requirements of the Extradition Treaty and has sustained its burden of establishing probable cause to believe that William Alcivar Medina Rodriguez committed the alleged crime of illegal drug trafficking. Pursuant to 18 U.S.C. § 3184, the Court hereby certifies that all of the legal prerequisites for extradition have been met and orders William Alcivar Medina Rodriguez extradited to Peru to face charges of illegal drug trafficking, in violation of Articles 296 and 297 of the Peruvian Criminal Code.

**SO ORDERED:**

Dated: Central Islip, New York
       February 13, 2009

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge